UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LICARI FAMILY CHIROPRACTIC INC.,
PETER LICARI, and GOODSON &
COMPANY, LTD. ATTORNEYS AND
COUNSELORS AT LAW,

    Plaintiffs,

v.                                          Case No: 8:16-cv-3461-MSS-JSS

ECLINICAL WORKS, LLC,

    Defendant.

## ORDER

**THIS CAUSE** comes before the Court for consideration of Defendant's Motion for Summary Judgment on the Individual Claims of All Named Plaintiffs, (Dkt. 142), Plaintiffs' responses in opposition thereto, (Dkts. 147, 148), and Defendant's replies in support of the Motion, (Dkts. 154, 155); and Plaintiffs' Motions for Summary Judgment, (Dkts. 151, 152), Defendant's responses in opposition thereto, (Dkts. 158, 159), and Plaintiffs' replies in support of the Motions. (Dkts. 164, 165) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment on the Individual Claims of All Named Plaintiffs and **DENIES** Plaintiffs' Motions for Summary Judgment.

I.    BACKGROUND

    A.  Factual Background

This case stems from a one-page fax eClinicalWorks, LLC sent on February 4, 2014. (Dkt. 146 at ¶ 10) eClinicalWorks provides software that allows medical providers to electronically transmit health records. (Id. at ¶ 5) The fax announces that

"eClinicalWorks V10 is here!" and asks, "Not an eClinicalWorks Customer? Make the switch to eClinicalWorks!" (Id. at ¶ 11) The fax also contains an opt-out notice: "If you would like to opt out from fax communications please go to www.eclinicalworks.com/optoutfax." (Id. at ¶ 14) Licari Family Chiropractic Inc., a Florida-based chiropractic clinic co-owned by Peter Licari, and Goodson & Company, Ltd., an Ohio-based law firm, claim that eClinicalWorks violated the Telephone Consumer Protection Act ("TCPA") by sending them the fax. (Id. at ¶¶ 1-4; Dkt. 151 at 4-5; Dkt. 152 at 6-7)

Licari received the fax via SmartFax, an online fax service. (Dkt. 146 at ¶¶ 15, 26) Licari was assigned a fax number upon signing up for SmartFax. (Id. at ¶ 23) When SmartFax received a fax at the designated number, it would convert the fax to a PDF and forward it as an attachment to Licari's email address. (Id. at ¶ 24) On February 4, 2014, the eClinicalWorks fax was sent to Licari's fax number, converted to a PDF, and forwarded to Licari's email address. (Id. at ¶ 26) That day or the next, Peter Licari opened the SmartFax email, recognized it as a "junk fax," and then closed the email and the attachment. (Id. at ¶ 28) SmartFax charged an overage fee of $0.08 per page if fax usage exceeded 250 pages in a given month. (Id. at ¶ 31) In February 2014, Licari received and sent a total of 286 pages of faxes. (Id. at ¶ 32) Accordingly, the one-page eClinicalWorks fax caused Licari to incur $0.08 in overage fees. (Id. at ¶ 30)

Although there is no dispute that Licari received the fax, the Parties disagree over whether the fax was successfully sent to Goodson. Unlike Licari, Goodson owned a traditional fax machine that "printed facsimiles received by it using paper and toner." (Id. at ¶ 35) Brett Goodson, the owner of the Goodson law firm, does not recall whether he or

2

anybody else at the firm received a fax from eClinicalWorks, and he does not have a copy or record of any such fax. (Dkt. 142-14 at 75:24-76:18, 82:21-84:7) Goodson nevertheless points to two pieces of evidence that purportedly establish that it received the eClinicalWorks fax. First, Goodson's fax number appears on a list of fax numbers eClinicalWorks prepared for use in delivering the fax. (Dkt. 142-5 at ¶ 4; Dkt. 146 at ¶ 40; Dkt. 153-3 at 198) Second, transmission records maintained by Slingshot Technologies, Inc.—an online service eClinicalWorks used to send faxes—show that eClinicalWorks successfully transmitted a one-page fax to Goodson's fax number on February 4, 2014. (Dkt. 17-9 at 10:18-14:22, 21:10-22:9; Dkt. 142-8) These transmission records do not, however, establish the content of any specific fax transmission. (Dkt. 142-8)

### B. Procedural Background

Licari filed a putative class action against eClinicalWorks in December 2016, alleging that the February 4, 2014 fax violated the TCPA because, among other things, the fax's opt-out notice was defective. (Dkt. 1) Licari subsequently sought to certify a class of all individuals who received the fax. (Dkt. 17) In seeking class certification, Licari relied on a Federal Communications Commission ("FCC") rule that "require[d] an opt-out notice on facsimile transmissions irrespective of whether the fax was solicited or unsolicited by the recipient." (Dkt. 69 at 5) Before the completion of class certification briefing, the D.C. Circuit invalidated the solicited-fax rule. Bais Yaakov of Spring Valley v. FCC, 852 F.3d 1078, 1082-83 (D.C. Cir. 2017). This meant that only unsolicited faxes were required to include opt-out notices. Id. As a result, Licari's proposed class was overbroad because it failed to exclude recipients who solicited the fax. (Dkt. 69 at 7) The Court accordingly

denied the motion for class certification without prejudice to Licari's right to renew the motion based on a redefined class. (Id. at 8)

Following the denial of class certification, a separate action filed by Goodson challenging the same February 4, 2014 fax was transferred to the Middle District of Florida and consolidated with the present action. (Dkt. 73) Plaintiffs subsequently renewed their motion for class certification, seeking to certify classes consisting of (i) "all persons and entities who received the Fax except those whom [eClinicalWorks] has identified as its current customers" and (ii) "all persons and entities who received the Fax except those who appear in [eClinicalWorks'] databases." (Dkt. 96; Dkt. 127 at 4) This Court denied the motion, explaining that "individualized issues concerning whether putative class members of each of the proposed classes provided prior express permission [to receive the fax] preclude[d] class certification of this matter." (Dkt. 127 at 25) Plaintiffs sought permission to pursue an interlocutory appeal of this ruling pursuant to Federal Rule of Civil Procedure 23(f). (Dkt. 131) The Eleventh Circuit declined to hear the appeal. (Id.)

The Parties have since filed cross-motions for summary judgment on Plaintiffs' individual claims. Relying on two recent FCC rulings clarifying that faxes sent via email from online fax services are not covered by the TCPA, eClinicalWorks seeks summary judgment against Licari primarily on the grounds that it received the fax via email rather than a traditional fax machine. (Dkt. 142 at 11-13) As to Goodson, eClinicalWorks contends that summary judgment is appropriate because there is insufficient evidence that it successfully received the February 4, 2014 fax. (Id. at 14-19) Licari too seeks summary judgment, contending that faxes sent via online fax services are subject to the TCPA and that eClinicalWorks violated the statute by sending it an unsolicited fax

advertisement. (Dkt. 152 at 2) Finally, Goodson argues that it is entitled to summary judgment because the evidence establishes as a matter of law that eClinicalWorks sent it an unsolicited fax advertisement. (Dkt. 151 at 1-2)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356). A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1320–21 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value."). "If a

party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

### III. DISCUSSION

It is undisputed that Licari received the eClinicalWorks fax as an email from an online fax service. Because the FCC has twice ruled that faxes received in this manner are not covered by the TCPA, and that interpretation warrants Chevron deference, eClinicalWorks is entitled to summary judgment against Licari. Triable issues remain, however, as to Goodson's TCPA claim because a reasonable factfinder could conclude that eClinicalWorks successfully sent the fax to Goodson. Accordingly, neither side is entitled to summary judgment as to Goodson's claim.

#### A. eClinicalWorks Is Entitled to Summary Judgment Against Licari

##### i. Licari Has Article III Standing

Before turning to the merits of Licari's claim, the Court must first address eClinicalWorks' contention that Licari lacks Article III standing. See Taylor v. Appleton, 30 F.3d 1365, 1366 (11th Cir. 1994) ("[A] court must first determine whether it has proper subject matter jurisdiction before addressing . . . substantive issues."). eClinicalWorks argues that because Licari "only received the Fax by email," it has "not suffered a concrete injury recognized under the TCPA to support Article III standing." (Dkt. 159 at 17) This argument is unpersuasive.

The "irreducible constitutional minimum of standing consists of three elements": "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable

judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." Id. "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Id. at 1548. "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." Id. For an injury to be "concrete," it "must be '*de facto*'; that is, it must actually exist."

"[A]n economic injury qualifies as a concrete injury." Debernardis v. IQ Formulations, LLC, 942 F.3d 1076, 1084 (11th Cir. 2019); see also Wilding v. DNC Servs. Corp., 941 F.3d 1116, 1125 (11th Cir. 2019) ("[E]conomic harm is a well-established injury for purposes of Article III standing."). "There is no minimum quantitative limit required to show injury; rather, the focus is on the qualitative nature of the injury, regardless of how small the injury may be." Salcedo v. Hanna, 936 F.3d 1162, 1172 (11th Cir. 2019). An "identifiable trifle is enough," because the purpose of standing doctrine is "to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem." United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 689 n.14 (1973).

Licari suffered a concrete monetary injury because it paid $0.08 in overage fees as a result of receiving the eClinicalWorks fax. (Dkt. 146 at ¶¶ 30-32) In the month the fax was sent, Licari received and sent a total of 286 pages of faxes. (Id. at ¶ 32) SmartFax charged an additional $0.08 per page if fax usage exceeded 250 pages in a month. (Id. at ¶ 31) Thus, the one-page eClinicalWorks fax caused Licari to incur $0.08 in overage fees. (Id. at ¶ 30) Put differently, had eClinicalWorks not sent the fax to Licari, it would

have saved $0.08. Although the economic loss Licari experienced was small, it is sufficient for standing purposes. See Carpenters Indus. Council v. Zinke, 854 F.3d 1, 5 (D.C. Cir. 2017) ("A dollar of economic harm is still an injury-in-fact for standing purposes."); Wallace v. ConAgra Foods, Inc., 747 F.3d 1025, 1029 (8th Cir. 2014) ("The consumers' alleged economic harm—even if only a few pennies each—is a concrete, non-speculative injury.").

To support its standing argument, eClinicalWorks relies on a recent district court decision holding that "one wasted minute spent reviewing a junk fax received through e-mail" does not count "as a concrete injury." Daisy, Inc. v. Mobile Mini, Inc., No. 2:20-CV-17-FTM-38MRM, 2020 WL 5701756, at *7 (M.D. Fla. Sept. 24, 2020). Daisy is distinguishable. There, the sole injury alleged was that an "employee wasted one minute reviewing the fax, deciding it was junk, and dragging the e-mail to his spam folder." Id. at *2. Crucially, the plaintiff did "not contend it pa[id] for [its online fax service] by the fax," and the "bill . . . d[id] not reflect per-fax charges." Id. at *2 n.3. Unlike Licari, the Daisy plaintiff could not point to any concrete monetary injury from the fax it received. Daisy thus does not disturb the Court's conclusion that the $0.08 overage fee Licari paid because of the eClinicalWorks fax is sufficient to establish an injury in fact.

### ii. Licari's TCPA Claim Fails Because It Received the Fax Via Email

"To protect consumers from unsolicited fax advertisements, Congress passed the [TCPA] in 1991 and amended it with the Junk Fax Prevention Act in 2005." Gorss Motels, Inc. v. Safemark Sys., LP, 931 F.3d 1094, 1099 (11th Cir. 2019). The TCPA forbids the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). It

defines a "telephone facsimile machine" as "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." Id. § 227(a)(3).

"Congress has authorized the FCC to issue regulations to implement the [TCPA]." Scoma Chiropractic, P.A. v. Dental Equities, LLC, No. 2:16-CV-41-FTM-99MRM, 2018 WL 2455301, at *2 (M.D. Fla. June 1, 2018); see also 47 U.S.C. § 227(b)(2) ("The Commission shall prescribe regulations to implement the requirements of this subsection."). The FCC, in turn, has delegated "adjudication and rulemaking" functions to the Consumer and Governmental Affairs Bureau "in matters pertaining to consumers and governmental affairs." 47 C.F.R. § 0.141(a).[1] Pursuant to that authority, in December 2019, the Bureau issued a declaratory ruling on the question of whether "an online fax service is a 'telephone facsimile machine'" under the TCPA. In the Matter of Amerifactors Fin. Grp., LLC Petition for Expedited Declaratory Ruling, No. 05-338, 2019 WL 6712128, at *3 (C.G.A.B. Dec. 9, 2019). The Bureau concluded that "an online fax service is not a 'telephone facsimile machine' and a fax sent to one is not 'an unsolicited facsimile advertisement' prohibited by the TCPA." Id.

The Bureau explained that "a fax received by an online fax service as an electronic message is effectively an email." Id. That is because, according to the Bureau, a "consumer can delete without printing" any "faxes sent to online fax services via an attachment." Id. The Bureau noted that "[c]onsumers can manage those messages the

---

[1] When the Consumer and Governmental Affairs Bureau "issue[s] [an] order pursuant to [its] delegated rulemaking authority," that "action has the same force and effect as actions of the Commission." Gorss Motels, Inc., 931 F.3d at 1104 (citing 47 C.F.R. § 0.203(b)).

9

same way they manage email by blocking senders or deleting incoming messages without printing them." Id. The Bureau also found that "an online fax service cannot itself print a fax—the user of an online fax service must connect his or her own equipment in order to do so." Id. Accordingly, because "online fax services differ in critical ways from the traditional faxes sent to telephone facsimile machines Congress addressed in the TCPA," the Bureau concluded that faxes received via an online fax service "are more accurately characterized as faxes sent to a 'computer' or 'other device,' and not a 'telephone facsimile machine.'" Id. at *4.

The Bureau also reasoned that "faxes sent to online fax services do not cause the specific harms to consumers Congress sought to address in the TCPA." Id. at *3. Those harms included that (i) "[a fax advertisement] shifts some of the costs of advertising from the sender to the recipient" and (ii) such a fax "occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax." Id. (quoting H.R. Rep. No. 317, 102d Cong., 1st Sess. 11 (1991)). The Bureau explained that "faxes sent to online fax services do not pose these harms and, in fact give consumers tools such as blocking capabilities to control these costs." Id.

The Bureau subsequently reaffirmed this interpretation of the TCPA in a September 2020 declaratory ruling. In the Matter of Joseph T. Ryerson & Son, Inc. Petition for Declaratory Ruling, No. CG02-278, 2020 WL 5362216 (C.G.A.B. Sept. 4, 2020). Citing Amerifactors, the Bureau reiterated that "the TCPA's language demonstrates that Congress did not intend the statute's prohibition to apply to an online service that receives faxes 'sent as email over the Internet.'" Id. at *3. The Bureau specifically rejected the argument that such transmissions "are TCPA-covered faxes

because they [are] eventually sent to a computer that could print the message." Id. at *4. As the Bureau explained, "[v]irtually all email could be accessed by computers with printing capabilities; yet emails do not implicate the consumer harms that are the TCPA's target, such as automatic printing." Id.

Here, there is no dispute that Licari received the eClinicalWorks fax as an email attachment forwarded by SmartFax, an online fax service. (Dkt. 146 at ¶¶ 15, 23-28) Peter Licari, the Licari clinic's co-owner, opened the email, saw that it was a "junk fax," and then closed the email and the attachment. (Id. at ¶ 28) He did not print the fax. (Id. at ¶¶ 28-29) Under Amerifactors and Ryerson, a fax received in this manner cannot give rise to TCPA liability because it was not sent to a "telephone facsimile machine." Accordingly, the question is whether the Court is bound to defer to these agency rulings. The Court concludes that Amerifactors and Ryerson are entitled to Chevron deference, and that, therefore, Licari's TCPA claim fails as a matter of law.

"When determining whether to defer to an agency's interpretation of a statute it implements, the court follows the established Chevron framework." Koch Foods, Inc. v. Sec'y, U.S. Dep't of Labor, 712 F.3d 476, 480 (11th Cir. 2013). "First, applying the ordinary tools of statutory construction, the court must determine whether Congress has directly spoken to the precise question at issue." City of Arlington v. FCC, 569 U.S. 290, 296 (2013). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id.

11

The only reported decision the Court has reviewed that has considered whether Amerifactors warrants Chevron deference concluded that it does. Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC, No. 117CV01149JDBJAY, 2020 WL 4937790, at *7 (W.D. Tenn. Aug. 24, 2020) (holding that "Chevron deference applies to the Bureau's interpretation" in Amerifactors). As noted above, the TCPA defines "telephone facsimile machine" as "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3). Amedisys concluded that the first step of the Chevron analysis was satisfied because "Congress ha[d] not directly spoken to the precise question at issue"—whether the TCPA covers "online fax services." Amedisys Holding, LLC, 2020 WL 4937790, at *5. Amedisys reasoned that "Congress did not define 'equipment' or any of the other terms used in the definition of a telephone facsimile machine, and the ordinary definitions of those terms do not shed light on whether an online fax service is included in that definition." Id. Amedisys further concluded that Congress, "at a minimum, implicitly delegated authority to the [FCC] to interpret the provisions of the TCPA," and that the Bureau, "in turn, issued its interpretation [in Amerifactors] in the exercise of its rulemaking authority." Id. at *7.

Next, Amedisys held that Amerifactors' interpretation of the TCPA was "reasonable" and thus entitled to deference. Id. at *8. As Amedisys explained, the Bureau "first looked to the plain language of the statute and correctly noted that the TCPA's prohibition on unsolicited fax advertisements applies only to faxes sent from a 'telephone facsimile machine,' a 'computer,' or any 'other device' to a 'telephone facsimile machine.'" Id. Based on the "characteristics of an online fax service"—including that "the user

accesses the document via [an] online portal or via an email attachment"—the Bureau "concluded that [such services] do not fall within the TCPA's definition of a telephone facsimile machine." Id. Amedisys ultimately held that because the Bureau's "construction of the statute [was] reasonable, [it] [was] required to accept it." Id.

Licari offers two principal arguments against applying Amerifactors and Ryerson. Neither is persuasive. First, Licari contends that the controlling FCC rulings are two agency decisions that predate Amerifactors and Ryerson. (Dkt. 165 at 9) In 2003, the FCC issued an order concluding that "faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes." In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14133 (2003). At the same time, the FCC "clarif[ied]" that "the prohibition does not extend to facsimile messages sent as email over the Internet." Id. Twelve years later, the Bureau issued a declaratory ruling finding that "efaxes"—faxes sent "over telephone lines" to "a computer attached to a fax server or modem" that "convert[s] the fax into" an email—are subject to the TCPA. In the Matter of Westfax, Inc. Petition for Consideration & Clarification, 30 F.C.C. Rcd. 8620, 8623-24 (2015).

Licari's reliance on these earlier FCC rulings is unavailing. The Bureau expressly ruled that the question presented in Amerifactors was not "governed" by its earlier decision in Westfax. Amerifactors, 2019 WL 6712128, at *4. The Bureau explained that Westfax "assumed that the 'efax' in question was sent to a computer with an attached fax modem that had the capacity to print the fax, as required by statute." Id. Westfax did not, however, consider "online fax services" such as SmartFax, which "hold inbound faxes in

13

digital form on a cloud-based server, where the user accesses the document via the online portal or via an email attachment and has the option to view, delete, or print them as desired." Id. The FCC's 2003 order is likewise consistent with Amerifactors and Ryerson. "In the 2003 [o]rder, the FCC concluded that 'computerized fax servers' and 'personal computers equipped with, or attached to, modems' are equipment that fall within the statute's definition of a telephone facsimile machine; whereas in the Amerifactors Ruling, the Bureau determined that an 'online fax service' itself is not such equipment." Amedisys Holding, LLC, 2020 WL 4937790, at *8. Because the relevant agency rulings are Amerifactors and Ryerson, there is no basis to apply Westfax or the 2003 order here.

Second, Licari contends that even if Amerifactors and Ryerson warranted deference, they would not apply here because they do not operate retroactively. (Dkt. 165 at 13) Licari received the fax on February 4, 2014, years before the Amerifactors and Ryerson decisions were issued. (Dkt. 146 at ¶ 10) "[N]o problem with the retroactive application of [these rulings] exists," however, because they are "clarifications of existing law and not new rules or regulations." Heimmermann v. First Union Mortg. Corp., 305 F.3d 1257, 1260 (11th Cir. 2002); see also Clay v. Johnson, 264 F.3d 744, 749 (7th Cir. 2001) ("[A] rule simply clarifying an unsettled or confusing area of the law . . . does not change the law, but restates what the law according to the agency is and has always been."). "While not dispositive, an agency's determination that a new statement is a clarification of existing law, rather than an entirely new rule, is generally given much weight." Heimmermann, 305 F.3d at 1260. The Bureau made clear in Amerifactors that it was offering "clarification of th[e] issue" of whether online fax services are subject to the TCPA. Amerifactors, 2019 WL 6712128, at *3-4. That "clarification" did not create an

14

"entirely new rule" because, as explained above, Amerifactors is consistent with the prior rulings in Westfax and the 2003 order. Heimmermann, 305 F.3d at 1260. Because Amerifactors and Ryerson represent clarifications of the TCPA's reach, they apply retroactively to bar Licari's claim.[2]

Accordingly, this Court follows Amedisys's well-reasoned analysis and grants Chevron deference to the Bureau's position that online fax services are not covered by the TCPA. As a result, Amerifactors and Ryerson require entry of summary judgment against Licari, whose TCPA claim rests on a fax received as an email attachment from an online fax service.

### B. Factual Disputes Preclude Summary Judgment as to Goodson's Claim

Unlike Licari, Goodson owned a traditional fax machine that printed faxes "using paper and toner." (Dkt. 146 at ¶ 35) eClinicalWorks seeks summary judgment against Goodson on the grounds that there is insufficient evidence that it "received the [February 4, 2014 fax] on its facsimile machine." (Dkt. 142 at 15) Goodson contends that it is entitled to summary judgment because the undisputed facts allegedly establish that it received the eClinicalWorks fax. (Dkt. 151 at 4-5) Because there is a genuine dispute of fact as to whether Goodson successfully received the fax, neither side is entitled to summary judgment.

As noted above, the TCPA prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited

---

[2] Licari also points to expert testimony suggesting that SmartFax, the online fax service Licari employed, maintained equipment with the capacity to print the contents of fax transmissions. (Dkt. 152 at 10-11) This testimony is irrelevant because "it is the consumer to whom the content of a fax or efax is directed that is the 'recipient' under the TCPA." Westfax, 30 F.C.C. Rcd. at 8624. "Entities that convert faxes to email are not 'recipients' of such faxes under the TCPA because they are not the intended audience for the fax." Id. Here, the consumer (Licari) received the eClinicalWorks fax as an email attachment, and the Bureau has made clear that faxes received in this manner are not covered by the TCPA.

15

advertisement." 47 U.S.C. § 227(b)(1)(C). Accordingly, "[t]he elements of a TCPA claim are (1) the fax is an advertisement, (2) the fax is unsolicited, and (3) the defendant sent the fax to a telephone facsimile machine using a telephone facsimile machine, computer, or other device." Daisy, Inc. v. Pollo Operations, Inc., No. 2:14-CV-564-FTM-38CM, 2015 WL 1418607, at *3 (M.D. Fla. Mar. 27, 2015) (citing 47 U.S.C. § 227(b)(1)(C)). To establish the third element, a plaintiff must prove that the fax "was successfully transmitted . . . and that the transmission occupied the [plaintiff's] telephone line and fax machine . . . during that time." Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A., 781 F.3d 1245, 1252 (11th Cir. 2015); see also Ira Holtzman, C.P.A. v. Turza, 728 F.3d 682, 684 (7th Cir. 2013) ("[E]ach recipient must prove that his fax machine or computer received the fax. . . .").

Here, summary judgment is inappropriate because there is a triable issue as to whether the eClinicalWorks fax was "successfully transmitted" to Goodson's fax machine. John G. Sarris, D.D.S., P.A., 781 F.3d at 1252. eClinicalWorks notes that there is no "direct evidence" Goodson received the fax. (Dkt. 142 at 14) Goodson does not have a copy or record of the fax, and Brett Goodson, the owner of the Goodson law firm, does not remember whether he or anybody else at the firm received the fax. (Dkt. 142-14 at 75:24-76:18, 82:21-84:7) Goodson responds by pointing to two pieces of indirect evidence: (i) Goodson's fax number appears on eClinicalWorks' list of intended recipients of the fax, and (ii) transmission records maintained by Slingshot Technologies—the online service eClinicalWorks used to send faxes—establish that eClinicalWorks successfully transmitted a one-page fax to Goodson's fax number on February 4, 2014, the day the

16

eClinicalWorks fax was sent. (Dkt. 17-9 at 10:18-14:22, 21:10-22:9; Dkt. 142-5 at ¶ 4; Dkt. 142-8; Dkt. 146 at ¶ 40; Dkt. 153-3 at 198)

The record in this case would permit a reasonable factfinder to conclude that Goodson successfully received the fax. The factfinder could draw that conclusion from the evidence that eClinicalWorks intended to send the fax to Goodson and that a one-page fax was successfully sent to Goodson on the day the challenged fax was sent out. A reasonable factfinder could also draw the opposite conclusion, however. There is no direct evidence that Goodson received the fax. Moreover, although the Slingshot transmission logs establish that Goodson successfully received a one-page fax from eClinicalWorks on February 4, 2014, those logs shed no light on the content of any specific fax transmission. (Dkt. 142-8) Significantly, the logs do not record transmissions of the challenged fax alone. Instead, they reflect all of the faxes eClinicalWorks sent on February 4, 2014—many of which have no connection to the fax at issue in this case. (Id.) Thus, a reasonable factfinder could conclude that there is insufficient evidence that Goodson received the challenged fax. Summary judgment is inappropriate as to Goodson's claim.

eClinicalWorks incorrectly contends that this case is on all fours with Community Vocational Schools of Pittsburgh, Inc. v. Mildon Bus Lines, Inc., 307 F. Supp. 3d 402 (W.D. Pa. 2018). There, the plaintiff sought to prove successful transmission of an alleged junk fax by pointing to transmission logs "demonstrating that [the fax service used by the defendant] sent *something* to [the plaintiff]." Id. at 418 (emphasis added). The court concluded that there was "insufficient evidence to determine that what was actually sent was a fax that violated the TCPA or that an unsolicited fax was received." Id. The court

reached that conclusion based partly on testimony that, during the advertising campaign in which the fax was transmitted, there were "unresolved rendering problems," "meaning the faxes were going out blank 'or something.'" Id. at 409, 418-19. These issues, according to the court, would prevent a reasonable jury from determining the content of any fax sent out as part of the advertising campaign. Id. at 418-19. Here, by contrast, eClinicalWorks has not pointed to any evidence that copies of the February 4, 2014 fax were unsuccessfully transmitted due to technical errors. Community Vocational, thus, does not support eClinicalWorks' bid for summary judgment.[3]

### IV. CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Defendant's Motion for Summary Judgment on the Individual Claims of All Named Plaintiffs, (Dkt. 142), is **GRANTED IN PART and DENIED IN PART.**

    a. The Motion is **GRANTED** as to Plaintiffs Licari Family Chiropractic Inc.'s and Peter Licari's claim against Defendant.

    b. The Motion is **DENIED** in all other respects.

2. Plaintiffs' Motions for Summary Judgment, (Dkts. 151, 152), are **DENIED**.

    **DONE** and **ORDERED** in Tampa, Florida, this 11th day of January 2021.

    MARY S. SCRIVEN
    UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person

---

[3] eClinicalWorks also argues that the Court should ignore certain expert testimony offered by Goodson in determining whether there is a genuine dispute of fact as to whether Goodson successfully received the fax. (Dkt. 142 at 15-19) The Court need not reach this question at this stage because, as explained above, other evidence in the record is independently sufficient to create a genuine factual dispute as to Goodson's receipt of the fax.